[Docket No. 14]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| KEVIN ZULAUF, | |
| Plaintiff, | Civil No. 15-3526 (RMB/JS) |
| v. | **OPINION** |
| STOCKTON UNIVERSITY, et al., | |
| Defendants. | |

APPEARANCES:

William G. Blaney, Jr., Esq.
Blaney & Donohue, PA
3200 Pacific Avenue, Suite 200
Wildwood, NJ 08260
    *Attorney for Plaintiff Kevin Zulauf*

Christie Ann Pazdzierski, Deputy Attorney General
Office of the New Jersey Attorney General, Division of Law
25 Market Street
Trenton, NJ 08625
    *Attorney for Defendants Stockton University and
    Lonnie Folks*

**BUMB**, UNITED STATES DISTRICT JUDGE:

This matter comes before the Court upon the Motion for Summary Judgment [Docket No. 14] by Defendants Stockton University ("Stockton") and Lonnie Folks, in his individual and corporate capacity as Stockton's Director of Athletics (together, the "Defendants"). Defendants seek the dismissal of the Complaint filed by Plaintiff Kevin Zulauf (the "Plaintiff") in its entirety with prejudice. Having considered the parties'

1

submissions, for the reasons set forth herein, Defendants'
Motion for Summary Judgment will be granted, in part, and
denied, in part.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was hired by Stockton as a part-time assistant
coach for the men's lacrosse team in 2007.  Defs. SOMF ¶ 11
[Docket No. 14-2].  He worked as the part-time assistant coach
for the 2007-2008 and 2008-2009 lacrosse seasons.  Id.  He was
paid $4,200 for the 2007-2008 season and $4,500 for the 2008-
2009 season.  Id. ¶ 12.  As the assistant coach, he was
responsible for assisting in practices, contests, trips to other
schools, and recruitment.  Id. ¶ 13.

Plaintiff became the head coach for the men's lacrosse team
beginning in the 2009-2010 season.  Id. ¶ 14.  He continues to
be employed in this position at the present time.  Id. ¶ 17.
Throughout this time, he has been classified as a part-time head
coach.  However, Plaintiff contends that he has been
misclassified as such because he performs essentially the same
work as the head coaches who are classified as full-time.  Pl.
Resp. to Defs. SOMF ¶¶ 14-17 [Docket No. 20].  As head coach,
Plaintiff's salary was $13,500 for the 2012-2013 season, $13,500
for the 2013-2014 season, $14,000 for the 2014-2015 season, and
$15,000 for the 2015-2016 season.  Pl. SOMF ¶ 87 [Docket
No. 21].

According to Linda Yost, Plaintiff's direct supervisor and Stockton's Associate Director of Intercollegiate Sports, Plaintiff's job responsibilities are "very similar" to that of the female full-time women's lacrosse coach and "substantially similar" to all the other full-time head coaches.  Yost Dep. Tr. 49:24-50:24, 51:4-5 [Docket No. 14-7].  Per Plaintiff's contract, he is limited, as a part-time head coach, to working 944 hours per year.  Defs. SOMF ¶ 18.  Plaintiff, however, disputes that this limitation is enforced.  Pl. Resp. to Defs. SOMF ¶ 18.  Ms. Yost testified that Plaintiff regularly worked significantly longer hours and that this was necessary for him to adequately perform his job responsibilities.  Yost Dep. Tr. 33:22-24; 66:10-67:2.

Full-time head coaches are required to work thirty-five hours per week, hold office hours, keep timesheets, and attend quarterly and weekly staff meetings.  Defs. SOMF ¶¶ 49, 52, 54, 57.  Full-time head coaches are also assigned to department committees.  Pl. SOMF ¶¶ 38-39.  While Plaintiff, as a part-time coach, was not required by contract to do so, Plaintiff routinely performed similar responsibilities.  For example, as head coach, Plaintiff has organized and run a summer lacrosse clinic at Stockton for several years.  Folks Dep. Tr. 232:23-234:10 [Docket No. 14-6].  He earned $2,000 for running the clinic during the 2013-2014 school year.  Pl. SOMF ¶ 51.

3

Plaintiff also attended the regular meetings of the head coaches, which was mandatory for full-time coaches and encouraged for part-time coaches.  Yost Dep. Tr. 41:19-42:5.  He also participated on the student disciplinary committee.  Id. 111:16-112:11.  During the off-season, Plaintiff arranged study hall sessions for his players twice per week.  Zulauf Dep. Tr. 25:18-26:9 [Docket No. 14-18].  Plaintiff also worked as the open house manager and ticket sales manager.  He was paid for these duties on an hourly basis.  For the 2013-2014 school year, Plaintiff earned $2,550 for these duties.  Pl. SOMF ¶ 51.

In May 2013, Stockton hired its first women's lacrosse head coach, Kimberly Williams.  Id. ¶ 49.  Ms. Williams was classified as a full-time head coach and her starting salary was $49,783, while Plaintiff's salary at that time was $13,500.  Id. ¶ 50.  Ms. Williams served as the head coach for the women's lacrosse team for the 2013-2014 and 2014-2015 seasons.  Id. ¶ 53.  Stockton then hired Cristina Maurizi as the full-time head coach for the women's lacrosse team for the 2015-2016 season.  Her starting salary was $54,079.  Id. ¶ 58.  It was Ms. Maurizi's first collegiate head coach position.  Id.  In contrast, Plaintiff's salary at that time was $15,000, after working for seven years as a head coach.  Id.

According to Defendant Folks, the Director of Athletics at Stockton, the head coach for the women's lacrosse team was made

a full-time position because of the value he wanted to place on the sport, the expectation of overall success, and "trying to balance out our staff alignment." Id. ¶ 54. Plaintiff testified that when he asked Defendant Folks why he could not be classified as full-time, Defendant Folks indicated that it was because he was a male, but that if he had been female he could have been hired as full-time. Plaintiff further testified that Defendant Folks explained that Stockton would have to hire more full-time female coaches before he could hire Plaintiff as full-time because Plaintiff is a male. Id. ¶ 55 (citing Folks Dep. Tr. 16:8-17:13).

In June 2013, Plaintiff's union filed a grievance against Stockton, asserting that Plaintiff performed full-time work and should, therefore, be classified and paid as a full-time head coach. Id. ¶ 60. As of 2014, Plaintiff was no longer permitted to work as open house and ticket sales managers. Id. ¶ 62. According to Stockton, the removal of these duties from Plaintiff was part of a restructuring of job duties, whereby certain responsibilities were redistributed from part-time coaches to full-time coaches. Id. ¶¶ 63, 70. In Ms. Yost's view, the removal of these duties from Plaintiff was retaliatory, as Defendants did not begin considering a restructuring of job duties "in earnest" until after the union grievance. Yost Dep. Tr. 83:10-84:3.

Based upon these facts, Plaintiff alleges that he has been unlawfully paid less than his female counterpart and that he was retaliated against after he complained about the pay differential.  On April 1, 2015, Plaintiff filed the instant litigation in the Superior Court of New Jersey, Law Division, Atlantic County, setting forth the following counts: sex discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD") (Count One); retaliation in violation of NJLAD (Count Two); sex based discrimination in violation of the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56.1(b) (Count Three); and violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) (Count Four) [Docket No. 1-2]. Defendants removed the action to federal court on May 22, 2015 [Docket No. 1].  Defendants now move for summary judgment and the dismissal of Plaintiff's Complaint in its entirety.

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it will "affect the outcome of the suit under the governing law[.]"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party."  Id.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Furthermore, a court need not adopt the version of facts asserted by the nonmoving party if those facts are "so utterly discredited by the record that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 372, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party[.]" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth

specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)).  The nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment.  Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")).

"Summary judgment is to be used sparingly in employment discrimination cases[.]" Doe v. C.A.R.S. Protection Plus, Inc., 527 F.3d 358, 369 (3d Cir. 2008).  "[T]he plaintiff's burden at this stage is not particularly onerous." Id.  The Third Circuit has also advised that, "[i]n an employment discrimination case a trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 321 (3d Cir. 2000) (internal citations and quotations omitted).

## III.  ANALYSIS

### A. New Jersey Wage and Hour Law

Defendants contend that Plaintiff's NJWHL claim must be dismissed because the State and branches of the State are not considered "employers" as defined by the NJWHL.  Defendants rely

largely upon Allen v. Fauver, in which the New Jersey Supreme
Court affirmed the Appellate Division's determination that "the
Wage and Hour Law did not apply to the State because that
statute does not include the State of New Jersey in the
definition of 'employer.'"  167 N.J. 69, 72 (2001) (affirming
Allen v. Fauver, 327 N.J. Super. 14, 20-21 (App. Div. 1999)).

The Appellate Division in Allen held that the State is not
an "employer" under the definition set forth in N.J.S.A.
§ 34:11-56a1(g), reasoning as follows:

> The definition of employer as set forth in the Wage
> and Hour statute 'includes any individual,
> partnership, association, corporation or any person or
> group of persons acting directly or indirectly in the
> interest of an employer in relation to an employee.'
> N.J.S.A. 34:11-56a1(g).  On its face, the State is not
> within that definition.  Plaintiffs argue that the
> word 'includes' in a statutory definition is typically
> a word of enlargement, not limitation, thereby
> allowing expansion of the enumerated members of the
> group, as appropriate.  We have no quarrel with that
> general proposition, but an expansive definition is
> not synonymous with an exhaustive definition.  Had the
> Legislature intended to include all employers both
> public and private, it most certainly would have done
> so explicitly as it has in the Employer-Employee
> Relations Act (N.J.S.A. 34:13A-3(c)) and the Law
> Against Discrimination (N.J.S.A. 10:5-5(e)).  We also
> note there are statutes applicable only to public
> employees that parallel the entitlements provided
> under the Wage and Hour Law.  Compare N.J.S.A. 11A:6-
> 24 and N.J.S.A. 52:14-17.13 with N.J.S.A. 34:11-56a4.
> If state government as employer was subject to the
> Wage and Hour Law, these other statutes would be
> largely unnecessary.

Allen, 327 N.J. Super. at 21 (emphasis added).

Plaintiff does not quarrel with Allen's holding.  Rather, Plaintiff argues that Allen only addressed the overtime provisions set forth in N.J.S.A. § 34:11-56a1, et seq., not the discrimination in wages provisions set forth in N.J.S.A. § 34:11-56.1, et seq.  The latter provisions include a separate definitional section, which, in Plaintiff's view, should be interpreted to encompass State entities and actors.  The definition of "employer" in N.J.S.A. § 34:11-56.1(b) "includes any person acting directly or indirectly in the interest, or as agent, of an employer in relation to an employee and further includes one or more individuals, partnerships, corporations, associations, legal representatives, trustees, trustees in bankruptcy, or receivers, but such term shall not include nonprofit hospital associations or corporations."[1]

---

[1] In their reply brief, Defendants argue that Plaintiff has not properly pled a New Jersey Equal Pay Act claim under N.J.S.A. § 34:11-56.1, et seq., but rather Plaintiff has pled a NJWHL claim under N.J.S.A. § 34:11-56a1, et seq.  Defendants note that "[t]he [NJWHL], N.J.S.A. 34:11-56a1 to -56a38, and the [New Jersey Equal Pay Act], N.J.S.A. 34:11-56.1 to -56.12, are separate titles and provide for different causes of action." Defs. Reply Br. at 5 [Docket No. 22].  Accordingly, Defendants contend, "Count Three of Plaintiff's Complaint alleges a violation of the WHL, does not mention the NJEPA, and should be dismissed." Id.  The Court disagrees.  However titled, the Complaint makes abundantly clear, through its factual allegations and statutory citations, that Plaintiff is pursuing a discrimination in wages claim under N.J.S.A. 34:11-56.1, et seq., not an overtime or minimum wage claim under N.J.S.A. § 34:11-56a1, et seq.  See, e.g., Compl. ¶¶ 1 ("This is an action pursuant to the . . . New Jersey Wage and Hour Law N.J.S.A. § 34.11-56.1 . . . to remedy unlawful sexual

The Court disagrees with Plaintiff.  The definitional sections set forth N.J.S.A. § 34:11-56a1(g) and N.J.S.A. § 34:11-56.1(b) are materially the same.  Both include "any person" "acting directly or indirectly in the interest" "of an employer in relation to an employee," as well as "individuals, partnerships, corporations, [and] associations."  Compare N.J.S.A. § 34:11-56a1(g) with N.J.S.A. § 34:11-56.1(b).  Most importantly, neither definition includes public entities or actors on its face.

Neither the New Jersey Supreme Court nor the Third Circuit Court of Appeals has had the opportunity to specifically address whether the State is properly considered an "employer" under N.J.S.A. § 34:11-56.1(b).[2]  Nonetheless, the Court is persuaded that, if the New Jersey Supreme Court were to address this issue, it would extend its reasoning in Allen to this provision.

---

discrimination in the workplace"), 3, 5, 32 ("Defendants' actions, as detailed in this complaint were sex based and constitute illegal sex based discrimination in wages in violation of the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-56.1(b).").

[2] While the provisions set forth in N.J.S.A. § 34:11-56.1, et seq., have been applied against public entities and officials on occasion, the issue of whether those State defendants were "employers" under the relevant statutory definition was not raised on appeal.  See, e.g., Puchakjian v. Twp. of Winslow, 520 F. App'x 73, 76-77 (3d Cir. 2013); Stanziale v. Jargowsky, 200 F.3d 101, 107-08 (3d Cir. 2000); Gilkin v. Bd. of Chosen Freeholders for Gloucester Cty., 2009 WL 972824, at *4 (N.J. Super. Ct. App. Div. Apr. 13, 2009); Hesley v. City of Somers Point, 2006 WL 2482839, at *5-7 (N.J. Super. Ct. App. Div. Aug. 30, 2006).

Just as in Allen, "[o]n its face, the State is not within" the definition set forth in N.J.S.A. § 34:11-56.1(b).  See Allen, 327 N.J. Super. at 21.  The Court agrees that, "[h]ad the Legislature intended to include all employers both public and private, it most certainly would have done so explicitly," as it has in other laws, such as NJLAD, and as the United States Congress did in the federal Equal Pay Act, see 29 U.S.C. § 203(d).  Allen, 327 N.J. Super. at 21.  Accordingly, in light of the New Jersey Supreme Court's determination in Allen and the statutory text, the Court finds that the Defendants, as arms of the State, are not "employers" under N.J.S.A. § 34:11-56.1(b) for purposes of Plaintiff's discrimination in wages claim.[3] Summary judgment on Count Three of the Complaint is granted.

---

[3] As the Court finds that Defendants are not "employers" subject to suit under N.J.S.A. § 34:11-56.1, et seq., the Court does not reach Defendants' argument that sovereign immunity under the Eleventh Amendment bars Count Three of the Complaint, as Defendants do not raise sovereign immunity as a defense against any other claims.  The Court nonetheless notes that when a state voluntarily removes a state action to federal court, as Defendants have here, it waives its immunity under the Eleventh Amendment as it has "voluntarily invoked the federal court's jurisdiction."  Lapides v. Bd. of Regents of Univ. Sys. of Georgia, 535 U.S. 613, 620 (2002); accord Lombardo v. Pennsylvania, Dep't of Pub. Welfare, 540 F.3d 190, 198 (3d Cir. 2008) (holding "that the Commonwealth's removal of federal-law claims to federal court effected a waiver of immunity from suit in federal court.").

## B. **Equal Pay Act**

The Equal Pay Act provides, in relevant part, that:

No employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similarly working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

29 U.S.C. § 206(d)(1).

"An Equal Pay Act case involves shifting burdens." E.E.O.C. v. State of Del. Dep't of Health & Soc. Servs., 865 F.2d 1408, 1413 (3d Cir. 1989).  First, a plaintiff must set forth a prima facie case "by showing that employees of opposite sex were paid differently for performing 'equal work'; that is, work of substantially equal skill, effort and responsibility, under similar working conditions."  Id. at 1413-14 (citing Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974)).  Once the plaintiff establishes a prima facie case, "[t]he burden of persuasion then shifts to the employer to demonstrate the applicability of one of the four affirmative defenses specified in the Act."  Id. at 1414.  Importantly, "[t]o prevail on an Equal Pay Act claim, a plaintiff need not prove that the employer intended to discriminate.  Such a showing, however, may

be used to establish that an employer's reliance on an affirmative defense is merely a pretext for discrimination." <u>Id.</u> at 1414 n. 8.

Defendants argue that the undisputed facts establish that Plaintiff and the female full-time women's lacrosse head coach did not perform "equal work" and, therefore, that Plaintiff cannot establish a prima facie case under the Equal Pay Act. "The crucial finding on the equal work issue is whether the jobs to be compared have a common core of tasks, i.e., whether a significant portion of the two jobs is identical. The inquiry then turns to whether the differing or additional tasks make the work substantially different." <u>Rhoades v. Young Women's Christian Ass'n</u>, 423 F. App'x 193, 197 (3d Cir. 2011) (quoting <u>Brobst v. Columbus Servs. Int'l</u>, 761 F.2d 148, 156 (3d Cir. 1985)). "The equal work standard does not require that compared jobs be identical, only that they be substantially equal." 29 C.F.R. § 1620.13(a).

The Court disagrees with Defendants' contention that the undisputed record establishes that "the 'different or additional tasks' completed by the full-time Women's Lacrosse Coach 'make the work substantially different.'" Defs. Br. at 9 [Docket No. 14-4]. There are clearly factual disputes as to whether Plaintiff and the female women's lacrosse head coach performed "equal work."

14

For example, the record demonstrates that there are factual disputes as to the number of hours Plaintiff worked.  Ms. Yost, Stockton's Associate Director of Intercollegiate Sports and Plaintiff's direct supervisor, testified that Plaintiff's job responsibilities as performed were "very similar" to those of the female full-time women's lacrosse coach and that Plaintiff attended the same meetings as the full-time female coach.  Yost Dep. Tr. 49:24-50:24.  Ms. Yost further noted that "[a]ll of the jobs of our coaches are substantially similar."  Id. 51:4-5. Additionally, she testified that Plaintiff regularly worked more than 25 hours per week, even though part-time coaches were supposed to be capped at 25 hours per week, and that this was necessary for him to properly perform his job responsibilities. Id. 33:22-24; 66:10-67:2.

Likewise, the record establishes that Plaintiff participated on committees, ran clinics, and arranged study hall sessions for his players, even though he, unlike the full-time head coaches, was not contractually required to do so.[4]  Until

---

[4] The Court notes that the relevant regulations state that the Equal Pay Act "prohibits discrimination by employers on the basis of sex in the wages paid for 'equal work on jobs the performance of which requires equal skill, effort and responsibility and which are performed under similar working conditions.'  The word 'requires' does not connote that an employer must formally assign the equal work to the employee; the EPA applies if the employer knowingly allows the employee to perform the equal work."  29 C.F.R. § 1620.13(a) (emphasis added).

2014, for instance, Plaintiff participated on the student disciplinary committee.  Id. 111:16-112:11.  He also ran a summer lacrosse clinic at Stockton for several years.  Folks Dep. Tr. 232:23-234:10.  Additionally, Plaintiff held study halls for his players twice per week.  Zulauf Dep. Tr. 25:18-26:9.  Moreover, John Heck, the Director of Athletic Operations, testified that the additional duties that full-time coaches are required to perform involve a time commitment of approximately one hour per week and that committee participation involves a time commitment of roughly three to ten hours per year.  Heck Dep. Tr. 41:14-42:1, 42:24-43:18 [Docket No. 14-9].  The record demonstrates various genuine issues of material fact as to whether Plaintiff and the female full-time lacrosse coach performed "equal work" or whether the different or additional tasks completed by the female lacrosse coach made their jobs substantially different.  These factual disputes must be resolved by the jury.

In the alternative, Defendants argue, even if Plaintiff can establish a prima facie case, summary judgment is appropriate because the pay differential is based on factors other than sex. Defendants claim that Plaintiff was paid less than the female women's lacrosse head coach, not because of his gender, but because Stockton was attempting to comply with Title IX of the Education Amendments of 1972, which prohibits discrimination on

16

the basis of sex in athletic programs, and to encourage female

students' participation in athletic programs.  See Defs. Br. at

13-18.  To succeed on this argument, Defendants must demonstrate

that this was the actual reason for the pay differential.

Stanziale, 200 F.3d at 107-08.  In Stanziale, the Third Circuit

explained that:

> unlike an ADEA or Title VII claim, where an employer
> need not prove that the proffered legitimate
> nondiscriminatory reasons actually motivated the
> salary decision, in an Equal Pay Act claim, an
> employer must submit evidence from which a reasonable
> factfinder could conclude that the proffered reasons
> actually motivated the wage disparity.  More to the
> point, where, as here, employers seek summary judgment
> as to the Equal Pay Act claim, they must produce
> sufficient evidence such that no rational jury could
> conclude but that the proffered reasons actually
> motivated the wage disparity of which the plaintiff
> complains.

Id. at 108 (internal citation omitted, emphasis added).

Defendants have not met this burden.  Plaintiff testified

in his deposition that Defendant Folks told him that "because

[he's] male [he] wouldn't be able to be hired full time," but

that "[i]f [he] was female, he could be hired full time."

Zulauf Dep. Tr. 16:21-17:1.  A rational jury could rely upon

this testimony to conclude that Defendants' proffered

nondiscriminatory reason is pretext.  The Court reiterates that

the Plaintiff is not required to prove that Defendants intended

to discriminate against him; rather, he must demonstrate that

the Defendants paid him less than female employees for equal work.  E.E.O.C., 865 F.2d at 1414 n. 8.[5]

As there are factual disputes as to whether Plaintiff and the female women's lacrosse head coach performed equal work and whether the pay differential was based on factors other than sex, the Court finds that summary judgment as to Plaintiff's Equal Pay Act claim is inappropriate.

### C. **NJLAD Sex Discrimination**

Under New Jersey law, NJLAD claims based upon sex discrimination in wages are analyzed under the framework of either the Equal Pay Act or Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, depending on the circumstances.  The New Jersey Supreme Court has explained:

> . . . in a case brought under the LAD presenting a gender-discrimination claim based on the payment of unequal wages for the performance of substantially equal work, the standards and methodology of the EPA [Equal Pay Act] should be followed.  These encompass the elements that comprise both a *prima facie* case and the corresponding transfer of the burden of proof. . . . If the complainant establishes a case of 'substantially equal' work that is compensated at

---

[5] The Court also questions the legitimacy of Defendants' proffered nondiscriminatory reason.  Title IX specifically states that it shall not be "interpreted to require any educational institution to grant preferential or disparate treatment to the members of one sex on account of an imbalance which may exist with respect to the total number or percentage of persons of that sex participating in or receiving the benefits of any federally supported program or activity, in comparison with the total number or percentage of persons of that sex in any community, State, section, or other area."  20 U.S.C. § 1681(b).

different rates of pay, then the defendant has the
burden of proof to establish by a preponderance of the
evidence the affirmative defenses delineated under the
EPA and incorporated into Title VII to overcome the
charge of unlawful discrimination.

We further determine that if such a complainant in an
action brought under the LAD based on gender-
discrimination fails to satisfy the standards of a
*prima facie* case of 'substantially equal' work, as
prescribed by the EPA, but the evidence demonstrates a
lesser degree of job similarity that would nonetheless
satisfy the less-exacting standards of a *prima facie*
case under Title VII, the burden that shifts to the
defendant should be only the burden of production or
explanation.  Thus, if such a complainant is able to
show only that the work is 'similar,' then the
defendant will be required to articulate a legitimate
non-discriminatory reason for the treatment of the
plaintiff, and the ultimate burden of persuasion shall
remain on the plaintiff.

Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 109-10 (1990).

The Court has already denied summary judgment as to

Plaintiff's Equal Pay Act claim because of disputed issues of

material fact as to whether Plaintiff and the female lacrosse

coach performed substantially equal work and whether the pay

differential was based on factors other than sex.  Accordingly,

considering Plaintiff's NJLAD claim under the Equal Pay Act

framework, as directed by Grigoletti, for the same reasons,

the Court finds that summary judgment as to Plaintiff's sex

discrimination claim under NJLAD is also inappropriate.

Even considered under the Title VII framework, summary

judgment as to the NJLAD sex discrimination claim is

unwarranted.  Where there is no direct evidence of

discrimination, NJLAD and Title VII claims are "evaluated using the familiar three-step, burden-shifting framework articulated in McDonnell Douglas[.]" Arenas v. L'Oreal USA Prods., Inc., 461 F. App'x 131, 133 (3d Cir. 2012) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)). Under this framework, a plaintiff must first establish a prima facie case of gender discrimination. Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 (3d Cir. 2006).

To establish a prima facie case of sex discrimination under NJLAD or Title VII, a plaintiff must establish that (1) he or she is in a protected class; (2) he or she was qualified for the position in question; (3) he or she suffered an adverse employment action; and (4) that the adverse employment action gives rise to an inference of unlawful discrimination. Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 842 (3d Cir. 2016). "[A] plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff 'less favorably than others because of [his] race, color, religion, sex, or national origin.'" Iadimarco v. Runyon, 190 F.3d 151, 163 (3d Cir. 1999) (quoting Furnco Const. Corp. v. Waters, 438 U.S. 567, 577 (1978)).

Once the plaintiff has established a prima facie case, "the burden then shifts to the employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions.  If the employer produces such a reason, the burden then shifts back to the plaintiff to prove that the employer's nonretaliatory or nondiscriminatory explanation is merely pretext for the discrimination or retaliation." Tourtellotte, 636 F. App'x at 842.  A plaintiff can demonstrate pretext and, therefore, withstand a motion for summary judgment by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  This "burden-shifting analysis applies with equal force to claims of 'reverse discrimination.'" Iadimarco, 190 F.3d at 158.

Defendants contend that Plaintiff has failed to establish a prima facie case because he has produced no evidence of any background circumstances that suggest that Stockton is the unusual employer who discriminates against the male majority. The Third Circuit specifically rejected this requirement in Iadimarco, reasoning that "all that should be required to establish a prima facie case in the context of 'reverse

21

discrimination' is for the plaintiff to present sufficient
evidence to allow a fact finder to conclude that the employer is
treating some people less favorably than others based upon a
trait that is protected under Title VII." 190 F.3d at 161.
Plaintiff has done so. For example, Plaintiff testified that
Defendant Folks told him that Plaintiff could not be considered
a full-time coach because he was male, but that if he were
female he could be classified as such. If credited, that
testimony is sufficient evidence from which a reasonable jury
could conclude that the Defendants paid Plaintiff less than his
female counterpart for similar work because of his sex.[6]
Defendants do not genuinely dispute that Plaintiff has
established the remaining elements of the prima facie case.[7]

---

[6] Even if Plaintiff were required to establish background
circumstances that support an inference that Stockton is the
unusual employer who discriminates against the majority, as
Defendants argue, this testimony would suffice. Indeed, such
testimony, if believed by the jury, could constitute direct
evidence of sex-based discrimination.
    [7] In their reply brief, Defendants claim for the first time
that Plaintiff has not suffered an adverse employment action.
Defs. Reply Br. at 13-14. The Court need not consider this
argument, as it was raised for the first time in Defendants'
reply brief, to which Plaintiff had no opportunity to respond.
Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler
Energy Corp., 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is
waived unless a party raises it in its opening brief, and for
those purposes 'a passing reference to an issue . . . will not
suffice to bring that issue before this court.'") (quoting
Simmons v. City of Philadelphia, 947 F.2d 1042, 1066 (3d Cir.
1991)). In any case, Defendants' decision to pay Plaintiff less
than his female counterpart for substantially similar work, if
established at trial, would constitute an adverse employment

Defendants then argue that, even if Plaintiff can establish a prima facie case, Stockton has a legitimate nondiscriminatory reason for the pay differential, namely that the female women's lacrosse head coach is a full-time employee with additional job responsibilities and requirements, such as serving on committees, holding study halls, running camps, and working thirty-five hours per week.  The burden next shifts to Plaintiff to demonstrate that this reason is pretext.  He can do so by identifying direct or circumstantial evidence from which a reasonable jury could "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  <u>Fuentes</u>, 32 F.3d at 764.

Plaintiff testified at his deposition that he spoke with Defendant Folks about why he could not be considered a full-time head coach.  He explained that Defendant Folks responded "that because I'm a male I wouldn't be able to be hired full time.  If I was a female, I could be hired as full time. . . . He would actually need to have more female full-time coaches before he

---

action.  <u>See</u> <u>Mieczkowski v. York City Sch. Dist.</u>, 414 F. App'x 441, 446 (3d Cir. 2011) ("an unwarranted salary disparity can constitute an adverse employment action") (citing <u>Stanziale</u>, 200 F.3d at 105-06); <u>Sherrod v. Philadelphia Gas Works</u>, 57 F. App'x 68, 73 (3d Cir. 2003) ("paying an individual a lower salary for discriminatory reasons can be an adverse employment action.").

can hire me as full time because I am male." Zulauf Dep. Tr. 16:21-17:10. This testimony directly contradicts Defendants' proffered legitimate, nondiscriminatory reason. Additionally, as set forth in detail above, there is evidence in the record that Plaintiff's job responsibilities were substantially similar to those of the full-time female lacrosse coach. For example, Plaintiff ran a lacrosse clinic, served on the disciplinary committee, and held study hall sessions. See, e.g., Folks Dep. Tr. 232:23-234:10; Yost Dep. Tr. 111:16-112:11; Zulauf Dep. Tr. 25:18-26:9. Plaintiff's direct supervisor, Ms. Yost, also testified that he worked more than part-time hours and that such a time commitment was necessary to perform his job properly. Yost Dep. Tr. 33:22-24; 66:10-67:2. Moreover, it is undisputed that certain of the additional job responsibilities now performed by the full-time coaches used to be performed by Plaintiff. For example, Plaintiff acted as the open house and ticket sales managers and still was paid significantly less than his female counterparts. Pl. SOMF ¶ 51.

This is sufficient evidence from which a reasonable jury could disbelieve Defendants' proffered legitimate reasons or believe that unlawful discrimination was more likely than not a motivating cause of Defendants' actions. Accordingly, for these reasons, summary judgment as to Plaintiff's NJLAD sex discrimination claim must be denied.

### D. **NJLAD Retaliation**

NJLAD makes it unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under" NJLAD.  N.J.S.A. § 10:5-12(d).  A retaliation claim under NJLAD is analyzed under the familiar McDonnell Douglas burden-shifting framework.  Michaels v. BJ's Wholesale Club, Inc., 604 F. App'x 180, 182 (3d Cir. 2015).  To establish a prima facie claim for retaliation under NJLAD, a plaintiff must demonstrate that he "engaged in a protected activity that was known to the employer, that [he] was subjected to an adverse employment decision, and that there is a causal link between the activity and the adverse action."  LaPaz v. Barnabas Health Sys., 634 F. App'x 367, 369 (3d Cir. 2015) (citing Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013)).

"If the plaintiff is able to make such a showing, the burden of production shifts to the employer to 'articulate some legitimate, nondiscriminatory reason for its decision.'"  Michaels, 604 F. App'x at 182 (quoting Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012)).  "If the employer 'meets this minimal burden, the plaintiff 'must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id. (quoting Fuentes, 32 F.3d at 764).

Plaintiff claims that certain of his job responsibilities, such as those of open house manager and ticket sales manager, were taken away from him in retaliation for his union grievance regarding wage inequity. Defendants apparently concede that Plaintiff has established a prima facie case of NJLAD retaliation.[8] Instead, Defendants argue that Stockton "made a legitimate business decision to remove these responsibilities from part-time employees so that these responsibilities could be absorbed by full-time personnel and the University no longer had to pay additional monies to part-time employees to ensure that these jobs were completed." Defs. Br. at 29-30. Additionally,

---

[8] Although the section addressing this claim in Defendants' moving brief is titled "Plaintiff cannot prove a *prima facie* case of retaliation in violation of NJLAD," the sole argument advanced in this section of the brief as to this claim is that Defendants made a legitimate nondiscriminatory business decision to remove certain responsibilities from Plaintiff and "[t]here is no evidence in the record that this decision was pretext for discrimination." Defs. Br. at 29-30. In their reply brief, for the first time, Defendants argue that Plaintiff cannot establish a prima facie case for NJLAD retaliation because there is no evidence of a causal connection between Plaintiff's alleged protected activity and the alleged adverse employment action. Defs. Reply Br. at 14-15. Accordingly, the Court will not consider this argument as it was raised for the first time in Defendants' reply brief and Plaintiff has not had an opportunity to respond. Foster Wheeler, 26 F.3d at 398 (quoting Simmons, 947 F.2d at 1066).

Defendants contend that "[t]here is no evidence in the record that this decision was pretext for discrimination." Id. at 30.

In turn, Plaintiff points to the testimony of Ms. Yost, Stockton's Associate Director of Intercollegiate Sports and Plaintiff's direct supervisor.  Ms. Yost testified that she believes Stockton acted with retaliatory intent in removing the job responsibilities from Plaintiff.  Yost Dep. Tr. 83:10-84:3. She also testified that Defendants did not begin considering a restructuring of job duties "in earnest" until "after Mr. Zulauf made his initial complaint with the Union."  Id. 83:19-23. According to Ms. Yost, Plaintiff was the only part-time coach that lost duties in this restructuring, as he was the only part-time coach who had previously had these responsibilities. Id. 27:13-17.  This is sufficient evidence from which a rational jury could reasonably either disbelieve Defendants' proffered reason or believe that Defendants removed the additional duties from Plaintiff for an unlawful retaliatory motive.  The jury must make these determinations.  Accordingly, summary judgment on Plaintiff's NJLAD retaliation claim must be denied.

### E. Individual Liability

Defendants argue that Defendant Folks cannot be held liable for aiding and abetting any NJLAD violations because there is no evidence that he knowingly and substantially assisted in any NJLAD violation or that he intended to facilitate

discrimination.  Defendants also contend that "an alleged aider
or abettor cannot aid or abet his or her own wrongful conduct."
Defs. Br. at 32.  The Court rejects the latter argument
outright.  See, e.g., Mann v. Estate of Meyers, 61 F. Supp. 3d
508, 529-30 (D.N.J. 2014) ("It may seem awkward, or even a legal
fiction, to say that a person can aid and abet his own conduct.
The case law, however, finds it at least as awkward to say that
a person can be held liable for aiding and abetting another
individual's discrimination, but cannot be held liable for his
own. . . . courts in this district have held that a supervisor
can be personally liable for his own conduct under the aiding
and abetting provision of the LAD.") (collecting cases); Rowan
v. Hartford Plaza Ltd., 2013 WL 1350095, at *7 (N.J. Super. Ct.
App. Div. Apr. 5, 2013) ("a supervisor can be individually
liable for his or her own affirmative LAD violations" under
aiding and abetting theory).

It is undisputed that Defendant Folks has been the Director
of Athletics at Stockton since 2008 and that he "oversees
Stockton's athletics and recreation programs, which includes
management, budgeting, and administrative responsibilities."
Defs. SOMF ¶¶ 8-9.  Furthermore, the evidence establishes that
Defendant Folks was directly involved in the restructuring of
job duties that forms the basis of Plaintiff's NJLAD retaliation
claim.  See, e.g., Yost Dep. Tr. 23:11-21; Folks Dep.

Tr. 180:13-181:7.  The record, including Defendant Folks's own deposition testimony, also demonstrates that he was involved in determining which coaches would be considered "full-time" and in setting new coaches' starting salaries.  See, e.g., Folks Dep. Tr. 21:21-25:4; 70:24-75:6.  He made the recommendation to make the women's lacrosse head coach position full-time.  Id. 75:16-23.  He was also directly involved in setting the salaries for the part-time coaches.  Id. 97:15-98:4.  Moreover, according to Plaintiff's deposition testimony, Defendant Folks specifically told Plaintiff that he could not be classified as "full-time" "because [he] is male" and that, "[i]f [he] was female, he could be hired full time."  Zulauf Dep. Tr. 16:21-17:1.

This is sufficient evidence from which a reasonable jury could determine that Defendant Folks is liable for aiding and abetting Stockton's alleged NJLAD violations, as well as his own allegedly violative conduct.  There are questions of fact that must be resolved by the jury as to whether Defendant Folks participated in or facilitated NJLAD violations.  Accordingly, summary judgment in favor of Defendant Folks on any aiding and abetting claims must be denied.

### F. Punitive Damages

Finally, Defendants seek the dismissal of Plaintiff's requests for punitive damages.  Punitive damages are recoverable against a public employer under NJLAD under certain

circumstances.  See Gares v. Willingboro Twp., 90 F.3d 720, 730
(3d Cir. 1996).  To recover punitive damages, a plaintiff must
establish: (1) "actual participation in or willful indifference
to the wrongful conduct on the part of upper management" and
(2) "proof that the offending conduct [is] 'especially
egregious.'"  Cavuoti v. New Jersey Transit Corp., 161 N.J. 107,
113 (1999) (quoting Rendine v. Pantzer, 141 N.J. 292, 313
(1995)); accord Muzslay v. City of Ocean City, 238 F. App'x 785,
791 (3d Cir. 2007).

       As the Court explained above, see supra Section III.E,
there are disputed issues of fact as to whether a member of
upper management, namely Defendant Folks, actually participated
in or was willfully indifferent to the wrongful conduct that
Plaintiff alleges.  Defendants contend that there is "no
evidence of especially egregious conduct by upper management."
Defs. Reply Br. at 16.  While the Court sees little to support a
punitive damages award, the issue of punitive damages is
generally a question of fact for the jury.  Elmiry v. Wachovia
Corp., 2007 WL 4117260, at *16 (D.N.J. Nov. 16, 2007) (quoting
Fisher v. Volz, 496 F.2d 333, 347 (3d Cir. 1974)).  Therefore,
summary judgment is denied without prejudice as to Plaintiff's
requests for punitive damages.  Defendants may revisit the issue
at the appropriate time at trial, if they so choose.

**IV.   CONCLUSION**

For the reasons set forth above, Defendants' Motion for Summary Judgment is granted, in part, and denied, in part. Summary judgment is granted as to Count Three of the Complaint. Summary judgment is denied as to the remaining counts.  An appropriate Order shall issue on this date.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: <u>February 22, 2017</u>

31